UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SPREAD SPECTRUM SCREENING LLC,

                    Plaintiff,

          v.

EASTMAN KODAK COMPANY, et al.,

                    Defendants.

_____

DECISION & ORDER

10-CV-6523L

## PRELIMINARY STATEMENT

          Spread Spectrum Screening LLC ("S3") commenced this action on February 18,

2010, alleging that Eastman Kodak Company ("Kodak") infringed its patent for a digital

halftoning screen, United States Patent No. 5,689,623 ("the '623 patent"), by making, using and

selling Kodak "Staccato" software products.  (Docket ## 1, 181-11 at 2).  Currently pending

before this Court is a motion by Kodak to stay the litigation.  (Docket # 181).  Although S3 does

not oppose a limited stay of certain aspects of the litigation, it opposes a stay of fact discovery.

(Docket # 186).

          For the reasons discussed below, Kodak's motion for a stay is granted, except that

S3 shall be permitted to apply for the issuance of letters rogatory authorizing depositions of two

witnesses who are Canadian citizens, Daniel Blondal and Lawrence Croft.

## BACKGROUND

          On February 18, 2010, S3 filed suit in the Northern District of Illinois against

Kodak and four of Kodak's customers that are licensed users of the Staccato software.  (Docket

# 173-11 at 3).  After being granted an extension of time to answer the complaint (Docket ## 25,

44), Kodak moved for a severance from the other defendants and to transfer the case to this

district (Docket # 82).  Kodak's motion was granted on September 1, 2010.  (Docket # 167).

The district judge to whom the case was assigned in the Northern District of

Illinois declined to stay discovery while Kodak's transfer motion was pending, and the parties

thus began exchanging initial disclosures under the supervision of a magistrate judge pursuant to

that court's local rules.  (Docket # 108).  On June 10, 2010, Kodak disclosed prior art to S3.

(Docket # 186 at 11 n.12).  On June 29, S3 served Kodak with document requests.  (*Id*. at 6).  On

July 19, Kodak moved for an extension of time to respond to S3's interrogatories and requests

for production (Docket # 154), and was granted extensions until August 18 to respond to S3's

interrogatories and September 1 to respond to the requests for production (Docket # 159).  Kodak

did not produce the requested discovery by those deadlines.  (Docket # 173).  On September 1,

2010, the transfer motion was granted.  (Docket # 160).

Kodak did not respond to S3's discovery requests even after the case was

transferred to the Western District of New York, maintaining that the "prior orders of the

Northern District of Illinois have no force before [the Western District of New York]."  (Docket

# 173-9).  On December 6, 2010, S3 moved to compel Kodak's responses.  (Docket # 173).

Ten days later, Kodak filed a petition for an *ex parte* reexamination with the

United States Patent and Trademark Office ("PTO").  (Docket # 181-11 at 4).  Shortly thereafter,

on January 10, 2011, Kodak filed the instant motion to stay the lawsuit pending the PTO's

determination of Kodak's petition for reexamination.  (Docket # 181).  The PTO granted

Kodak's petition for reexamination on February 1, 2011, and thereafter preliminarily rejected all claims of the patent-in-suit.  (Docket ## 188, Ex. J; 206; 207).

S3 opposes the requested stay in part, agreeing that the "claim scope-dependent aspects of the case"[1] should be stayed, but maintaining that fact discovery should proceed. (Docket # 186).  S3 contends that a stay of discovery would reward Kodak's "serial delay" in this case.  (*Id*. at 3).

On February 9, 2011, this Court held argument on S3's motion to compel and Kodak's motion to stay.  (Docket # 196).  This Court granted S3's motion to compel and reserved on Kodak's motion for a stay.  (Docket # 194).

S3 opposes a complete stay and requests permission to take three depositions during the pendency of the PTO's reexamination "in order to preserve critical evidence." (Docket # 197 at 1).  Specifically, S3 seeks to conduct a limited Rule 30(b)(6) deposition of Kodak and to depose two individuals, Daniel Blondal and Lawrence Croft, who, according to S3, "worked closely with [the '623 patent inventor] during Kodak's efforts to research and develop" the Staccato software ten years ago.  (*Id*. at 3).  Because the two named witnesses are Canadian citizens, S3 must apply for the issuance of letters rogatory in order to secure their testimony.[2] (Docket # 199 at 6).  Kodak opposes permitting S3 to conduct the depositions, but does not oppose S3 applying for the letters rogatory so that the depositions may commence when the stay is lifted.  (Docket # 202 at 1).

---

[1] Kodak uses the term "claim scope-dependent aspects of the case" to refer to claim construction, expert discovery, summary judgment and trial.  (Docket # 186 at 1).

[2] The parties agree that S3 must utilize a letters rogatory process, or similar process, to secure deposition testimony from Canadian citizens.  For ease of reference, this Court assumes, but does not decide, that the letters rogatory process is the proper process by which to secure the witnesses' testimony.

## DISCUSSION

### A.  Applicable Legal Principles

The procedure for patent reexamination is established by statute in Title 35 of the

United States Code.  In pertinent part, the statute provides:

> Any person at any time may file a request for reexamination by the
> [PTO] of any claim of a patent on the basis of any prior art cited
> under the provisions of section 301 of this title. . . . The request
> must set forth the pertinency and manner of applying cited prior art
> to every claim for which reexamination is requested.

35 U.S.C. § 302, *et seq*.  "One purpose of the reexamination procedure is to eliminate trial of the

issue of patent claim validity (when the claim is cancelled by the [PTO]), or to facilitate trial of

that issue by providing the district court with the expert view of the PTO (when a claim survives

the reexamination proceeding)."  *Snyder Seed Corp. v. Scrypton Sys., Inc.*, 1999 WL 605701, *2

(W.D.N.Y. 1999) (internal citations omitted).  "The procedure was intended 'to provide an

inexpensive, expedient means of determining patent validity which, if available and practical,

should be deferred to by the courts . . . ,' especially where the infringement litigation is in the

early stages."  *Id*. (citing *Digital Magnetic Sys., Inc. v. Ansley*, 1982 WL 52160, *1 (W.D. Okla.

1982)).  Resort to the reexamination procedure should not be sanctioned through the issuance of

a stay, however, where it is pursued for tactical advantage after substantial and costly discovery

has been conducted or where trial is imminent.  *Id*.

Although the commencement of reexamination proceedings does not operate as an

automatic stay of federal court litigation involving identical claims, a district court retains the

authority, pursuant to its inherent power to control and manage its docket, to stay an action

pending the outcome of reexamination proceedings before the PTO.  *Ethicon, Inc. v. Quigg*, 849

4

F.2d 1422, 1426-27 (Fed. Cir. 1988); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999), *appeal dismissed*, 243 F.3d 554 (Fed. Cir. 2000).  "A motion to stay an action pending the resolution of a related matter in the [PTO] is directed to the sound discretion of the court."  *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d at 406 (quoting *Braintree Labs., Inc. v. Nephro-Tech., Inc.*, 1997 WL 94237 (D. Kan. 1997)).  Neither party in this matter disputes the Court's authority to order a stay; rather, they dispute the extent to which the Court should exercise that authority.

Courts "routinely" issue stays pending the outcome of reexamination proceedings, particularly in cases where the litigants have not made substantial progress towards trial.  *See, e.g.*, *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 1134471, *2 (S.D.N.Y. 2000) (collecting cases); *see also Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996) (noting that "[b]ecause [] the PTO is considered to have expertise in deciding issues of patentability[,] many courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it").

Deferring determinations of patent validity to the PTO offers many advantages, including the following:

> 1.  All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
>
> 2.  Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3.  In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4.  The outcome of the reexamination may encourage a settlement without further use of the Court.

5.  The record of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6.  Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

7.  The cost will likely be reduced for the parties and the Court.

*Snyder Seed Corp.*, 1999 WL 605701 at *3 (quoting *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, 1987 WL 6314, *2 (N.D. Ill. 1987)); *accord Card Tech. Corp. v. DataCard Corp.*, 2007 WL 551615, *3 (D. Minn. 2007); *EchoStar Tech. Corp. v. TiVo, Inc.*, 2006 WL 2501494, *2 (E.D. Tex. 2006); *Pegasus Dev. Corp. v. Directv, Inc.*, 2003 WL 21105073, *2 (D. Del. 2003); *Perricone v. Unimed Nutritional Servs., Inc.*, 2002 WL 31075868, *1-2 (D. Conn. 2002); *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 1134471 at *2.

Three factors generally deserve consideration in determining whether to stay a litigation pending reexamination by the PTO: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.  *Softview Computer Prods. Corp.*, 2000 WL 1134471 at *2; *Xerox Corp.*, 69 F. Supp. 2d at 406 (citing *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 1995 WL 20470 (N.D. Cal. 1995).

## B.  Analysis

Turning to the first factor, S3 claims that the witnesses' memories may fade further if fact discovery is stayed.  (Docket # 186 at 6).  Specifically, S3 argues that the two individual witnesses possess "critical evidence" that will be lost if their depositions are delayed. (Docket # 197 at 3).  In addition, S3 contends that a complete stay will reward Kodak's dilatory

conduct.  (Docket # 186 at 12).  Finally, S3 also argues that the length of time that the letters

rogatory process takes to complete, which "may take a year or more," also weighs against the

requested stay.  (Docket # 197 at 4-6).

   Of course, some prejudice to S3 is inherent in any delay, but delay alone is

insufficient to prevent a stay.  *See Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F. Supp. at 953

(proceeding with the litigation could waste "time, resources, and significant efforts," whereas a

stay causes only minimal prejudice and "promote[s] judicial economy").  In support of its

contention that the two witnesses possess critical evidence, S3 represents that Blondal, Croft, and

the inventor of the '623 patent were employed by the same company, Creo, Inc., at roughly the

same time from 1998 through 2004, and that Blondal and Croft were subsequently employed by a

Kodak subsidiary.  (Docket # 197 at 2-3).  S3 further contends that the three worked together at

Creo "to synthesize the company's collective knowledge regarding the technological area of the

patent-in-suit" and that Blondal and Croft are listed as inventors on two of Kodak's pending

patent applications, which relate to digital halftone screening.  (*Id*. at 3-4).  This, without more, is

insufficient to establish that their testimony is critical.

   Nor has S3 demonstrated that Blondal and Croft's memories are more likely to

fade over the course of the next year than has already occurred over the last decade.  *See Alltech,*

*Inc. v. Agra-Partners, Ltd.*, 2007 WL 3120085, *2 (W.D. Ken. 2007) (finding "[t]he mere

possibility that memories could fade [insufficient] to outweigh the benefits" of granting a stay);

*see also Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 2010 WL

3239001, *2 (N.D. Ohio 2010) (rejecting the assertion that "if a stay were granted, evidence may

be lost, witnesses may die or relocate, or their memories may fade" as not "particularly likely").

Nonetheless, because the process of securing the letters rogatory can be lengthy, S3 should be permitted to apply for the issuance of the letters rogatory during the pendency of the stay, but may not conduct the depositions absent further order of the Court.

In addition, S3 has failed to demonstrate that it will be prejudiced if it is not permitted to conduct a 30(b)(6) deposition of Kodak.  At oral argument, S3 contended that it sought corporate testimony on only three topics of the dozens of topics originally noticed.[3] (Docket # 199 at 41).  This Court then directed S3 to identify those topics.  (*Id*. at 45).  S3 subsequently identified five topics as necessary to preserve critical evidence.  (Docket # 197 at 7).  A review of the listed topics reveals that they seek information regarding, *inter alia*, Kodak's knowledge of the patent-in-suit, including the persons involved and any meetings or discussions regarding the patent.  S3 again contends only that witnesses' memories may fade, but the Court finds that this general concern does not justify such broad discovery before the completion of the reexamination proceedings.

Finally, I do not find that granting a stay will unfairly reward Kodak for dilatory conduct in this case.  Although this Court concluded that Kodak was not justified in withholding discovery ordered by the district court in the Northern District of Illinois, that issue was addressed and remedied through an earlier motion to compel.  Taking the record as a whole, I find no basis to conclude that Kodak filed its petition for reexamination in order to gain a tactical advantage in this litigation.

In sum, I find that the advantages resulting from the PTO's reexamination outweigh the disadvantages that result from the invariable delay occasioned by the requested

---

[3]  The record reveals that the original notice identified at least thirty-three topics.  (*See* Docket # 197 at 7).

stay.  *See Snyder Seed Corp.*, 1999 WL 605701 at *4 ("the benefits of a stay pending

determination of defendant's requests for reexamination . . . outweigh any detriments to the

parties caused by delay of court proceedings").  *See also Procter & Gamble Co. v. Kraft Foods

Global, Inc.*, 2007 WL 2990152, *1 (N.D. Cal. 2007) ("an inter partes reexamination can have no

other effect but to streamline ongoing litigation" because such proceedings "impose estoppel

restraints upon third-party requesters" under 35 U.S.C. § 315(c)[4]) (internal quotation omitted),

*vacated on other grounds*, 549 F.3d 842 (Fed. Cir. 2008).

   The second factor – whether a stay will simplify the issues in question and trial of

the case – also weighs in favor of the requested stay.  Should the PTO determine that all or some

of the patent claims at issue are invalid, that determination will conserve the resources of this

Court and the litigants and simplify the issues before the Court.  Conversely, should the PTO

reaffirm the patent claims, the Court will benefit from its expert analysis of those claims and the

prior art.  *See Bausch & Lomb Inc. v. Rexall Sundown, Inc.*, 554 F. Supp. 2d 386, 391 (W.D.N.Y.

2008); *Softview Computer Prods. Corp.*, 2000 WL 1134471 at *3; *Snyder Seed Corp.*, 1999 WL

605701 at *2.

   The third factor – whether discovery is complete and whether a trial date has been

set – plainly weighs in favor of the issuance of a stay.  While document discovery has been

undertaken, no other fact discovery has occurred.  No *Markman* hearing has been scheduled, let

---

[4] 35 U.S.C. § 315(c) provides:

> A third-party requester whose request for an inter partes reexamination results in
> an order under section 313 is estopped from asserting at a later time, in any civil
> action arising in whole or in part under section 1338 of title 28, the invalidity of
> any claim finally determined to be valid and patentable on any ground which the
> third-party requester raised or could have raised during the inter partes
> reexamination proceedings.

alone conducted, and, of course, no trial date has been set.  The early posture of this litigation

thus supports the requested stay.  *See, e.g.*, *Bausch & Lomb Inc. v. Rexall Sundown, Inc.*, 554

F. Supp. 2d at 388, 390 (granting stay where only "limited discovery" had occurred and

"[s]ubstantial discovery and motion practice," including a *Markman* hearing, remained); *Snyder*

*Seed Corp.*, 1999 WL 605701 at *3 (granting stay where no scheduling order was yet entered).

On this record, I find that a stay is warranted in this case pending the PTO's

reexamination proceedings.  The Court will, however, permit S3 to apply for letters rogatory to

secure the depositions of Blondal and Croft, although it may not conduct any authorized

depositions absent further order of the Court.


## CONCLUSION

For the reasons stated above, Kodak's motion for a stay (**Docket # 181**) is

**GRANTED** until further order of the Court, except that S3 may apply for the issuance of letters

rogatory to obtain the testimony of Daniel Blondal and Lawrence Croft.

Counsel for the parties are directed to contact this Court in writing within seven

(7) days of a decision by the PTO on the pending reexamination proceeding to request a status

conference.

**IT IS SO ORDERED.**


                                             *s/Marian W. Payson*
                                             MARIAN W. PAYSON
                                             United States Magistrate Judge


Dated: Rochester, New York
          August __26__, 2011